IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

MARY GETTS BLAND,                )
                                 )
      Plaintiff,                 )
                                 )
            v.                   )   1:10cv1030 (JCC/JFA)
                                 )
FAIRFAX COUNTY, VIRGINIA,        )
                                 )
      Defendant.                 )

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendant Fairfax

County, Virginia's (the "Defendant" or the "County") Motion for

Judgment as a Matter of Law, for a New Trial, and to Alter or

Amend the Judgment (the "Motion").  For the following reasons,

the Court will deny Defendant's Motion but will order remittitur

of the jury award.

### I.  Background

#### A.  Factual Background

This case arises out of incidents of sexual harassment

by a male Fairfax County firefighter in the Fairfax County Fire

and Rescue Department (the "Department") against a female

firefighter.  Plaintiff Mary Getts Bland ("Plaintiff" or

"Bland") alleged that by allowing Lieutenant Timothy Young

("Young") to harass her, the County violated Title VII of the

Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e to e17

1

("Title VII").  After a three-day trial, the jury returned a verdict in favor of Plaintiff and against the County and awarded Plaintiff a verdict of $250,000.00.  [Dkt. 77.]

      B.   Procedural Background

After the jury returned its verdict, Defendant filed its timely Motion on June 22, 2011, [Dkt. 102], and a memorandum in support, [Dkt. 103].  With leave of the Court, Defendant also filed a supplemental memorandum in support on June 30, 2011. [Dkt. 118.]  Plaintiff filed an opposition on July 14, 2011, [Dkt. 119], and Defendant replied in support on July 19, 2011, [Dkt. 120].

Defendant's Motion is before the Court.

## II.  Standard of Review

Defendant moves for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b), for a new trial pursuant to Rule 59(a), for the Court to alter or amend the judgment pursuant to Rule 59(e), or, in the alternative, remittitur of the jury's verdict.  [Dkt. 102.]

      A.   Rule 50(b): Judgment as a Matter of Law

"When evaluating a Rule 50(b) motion, the court does not weigh the evidence or consider the credibility of the witnesses, but must grant the motion where it finds that 'substantial evidence does not support the jury's findings.'" *Trident Enters., Ltd. v. Airtronic USA, Inc.*, No. 01:09cv1355,

2011 WL 2160953, at *3 (E.D. Va. May 31, 2011) (quoting *Konkel v. Bob Evans Farms, Inc.*, 165 F.3d 275, 279 (4th Cir. 1999)).  A Rule 50(b) "motion must be granted 'if a reasonable jury could only reach one conclusion based on the evidence or if the verdict in favor of the non-moving party would necessarily be based upon speculation and conjecture.'"  *Id.* (quoting *Myrick v. Prime Ins. Syndicate, Inc.*, 395 F.3d 485, 489 (4th Cir. 2005)).  Thus, "[i]f reasonable minds could differ, [the court] must affirm the jury's verdict."  *Pitrolo v. Cnty. of Buncombe*, 407 F. App'x 657, 659 (4th Cir. 2011) (citing *Dennis v. Columbia Colleton Med. Ctr.*, 290 F.3d 639, 645 (4th Cir. 2002)).

Although a court is "'compelled to accord the utmost respect to jury verdicts and tread gingerly in reviewing them,'" a court is "'not a rubber stamp convened to merely endorse the conclusions of the jury, but rather [has] a duty to reverse the jury verdicts if the evidence cannot support it.'"  *Id.* (quoting *Price v. City of Charlotte*, 93 F.3d 1241, 1250 (4th Cir. 1996)).  A court "will grant motion for judgment as a matter of law 'if the nonmoving party failed to make a showing on an essential element of his case with respect to which he had the burden of proof.'"  *Id.* (quoting *Wheatley v. Wicomico Cnty.*, 390 F.3d 328, 332 (4th Cir. 2004)).  The Court must view the evidence and draw all reasonable inferences in the light most favorable to the nonmoving party.  *Lack v. Wal-Mart Stores, Inc.*, 240 F.3d 255,

259 (4th Cir. 2001).  "Thus, the moving party bears a 'hefty burden' in establishing that the evidence is insufficient to uphold the jury's verdict."  *Price*, 93 F.3d at 1349 (citation omitted).

    B.   <u>Rule 59(a): New Trial and Remittitur</u>

       Under Rule 59(a), a new trial may be granted in an action in which there has been a trial by jury "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States."  Fed. R. Civ. P. 59(a).  "On a Rule 59(a) motion, a district court may set aside the jury's verdict and grant a new trial only if '(1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice even though there may be substantial evidence which would prevent the direction of a verdict.'"  *Attard Indus., Inc. v. U.S. Fire Ins. Co.*, No. 1:10cv121, 2010 WL 4670704, at *2 (E.D. Va. Nov. 9, 2010) (quoting *Atlas Food Sys. & Servs. Inc. v. Crane Nat'l Vendors, Inc.*, 99 F.3d 587, 594 (4th Cir. 1996)).  In considering a Rule 59 motion, "courts may make credibility judgments in determining the clear weight of the evidence."  *Id.* (citing *Knussman v. Maryland*, 272 F.3d 625, 647 (4th Cir. 2001)).  "The grant or denial of a motion for new trial is entrusted to the sound discretion of the district court and will be reversed on appeal only upon a showing of

abuse of discretion." *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 305 (4th Cir. 1998).

As an alternative to ordering a new trial, a court may order a remittitur. "Remittitur, which is used in connection with [Rule] 59(a), 'is a process, dating back to 1822, by which the trial court orders a new trial unless the plaintiff accepts a reduction in an excessive jury award.'" *Id.* (quoting *Atlas Food*, 99 F.3d at 593). "There is no specific provision for remittitur under the Federal Rules of Civil Procedure, but it is well established that a remittitur should be ordered when a jury award will result in a miscarriage of justice." *Bennett v. Fairfax Cnty.*, 432 F. Supp. 2d 596, 599 (E.D. Va. 2006) (citing *Cline*, 144 F.3d at 305). "If a court concludes that a verdict is excessive, 'it is the court's duty to require a remittitur or order a new trial.'" *Id.* (citing *Cline*, 144 F.3d at 305). "Under the practice of remittitur, 'the trial court orders a new trial unless the plaintiff accepts a reduction in an excessive jury award.'" *Id.* (citing *Cline*, 144 F.3d at 305). "The decision as to whether damages are excessive is 'entrusted to the sound discretion of the district court.'" *Id.* (quoting *Robles v. Prince George's Cnty.*, 302 F.3d 262, 271 (4th Cir. 2002)).

C.   Rule 59(e): Alter or Amend the Judgment

Rule 59(e) of the Federal Rules of Civil Procedure governs motions to alter or amend a judgment and states only that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e).  "It is well-settled, however, that there are only three grounds for granting a motion to alter or amend a judgment: '(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice.'"  *Hart v. Hanover Cnty. Sch. Bd.*, 3:10cv794, 2011 WL 1791297, at *1 (E.D. Va. May 9, 2011) (quoting *Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir. 1993)).  "A Rule 59(e) motion is 'an extraordinary remedy which should be used sparingly.'"  *Id*. (quoting *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998)).

**III.  Analysis**

Defendant makes a number of arguments in support of its Motion.  First, "[t]he evidence presented to the jury does not support the conclusion that Young's conduct toward Bland was sufficiently severe or pervasive to create an objectively hostile work environment." (Memorandum in Support ("Mem.") [Dkt. 103] at 6.)  Second, "the evidence presented at trial did not establish the County's liability" for Young's conduct.

(Mem. at 10.)  Third, "the jury's verdict was excessive," so "the County should be granted a new trial on all issues."  (Mem. at 18-19.)  Finally, in the alternative, "the County moves for a substantial remittitur of the jury's verdict."  (Supplemental Memorandum in Support ("Supp.") [Dkt. 118] at 30.)  The Court will address these arguments in turn.

A.   Rule 50(b)

i.   Severe or Pervasive

In a claim under Title VII against an employer for creating a hostile work environment because of sexual harassment, a plaintiff must prove "'that the offending conduct . . . was sufficiently severe or pervasive[1] to alter the conditions of her employment and create an abusive work environment.'"  *Ziskie v. Mineta*, 547 F.3d 220, 224 (4th Cir. 2008) (citing *Ocheltree v. Scollon Prod., Inc.*, 335 F.3d 325, 331 (4th Cir. 2003)).  "There are 'both subjective[2] and objective components' to this element."  *Id.* at 227 (quoting *Ocheltree*, 335 F.3d at 333).  Thus, Plaintiff's perception of the environment as hostile or abusive must be reasonable.  *Id.* (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993)).

"The objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's

---

[1] A plaintiff must also show that the conduct was unwelcome and was based on his or her sex, *Ziskie*, 547 F.3d at 224, but Defendant does not challenge these elements.

[2] Defendant does not contest the subjective portion of this element.

position, considering all the circumstances." *Id.* (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)).  Whether harassment is severe or pervasive discrimination "depends on a constellation of surrounding circumstances, expectations, and relationships." *Jennings v. Univ. of N.C.*, 482 F.3d 686, 696 (4th Cir. 2007) (citing *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 651 (1999)). Significantly, "[a]ll the circumstances are examined, including the positions and ages of the harasser and victim, whether the harassment was frequent, severe, humiliating, or physically threatening." *Id.* (citing *Davis*, 526 U.S. at 650-51).

Here, the Court finds that, viewing the evidence in and drawing all reasonable inferences in the light most favorable to Plaintiff, *Lack*, 240 F.3d at 259, the County has not met its "hefty burden" in establishing that the evidence is insufficient to uphold the jury's verdict, *Price*, 93 F.3d at 1349.  Based on the evidence adduced at trial, a reasonable jury could return a verdict in favor of Plaintiff as to the "severe or pervasive" prong of Plaintiff's Title VII claim.  A review of the evidence is helpful.

On August 22, 2001, Bland had a personal interview with Young.  (Tr. 98:14-16.)  In the closed-door interview, Young asked Bland a series of questions, asking about her criminal background and driving record.  (Tr. 32:24-25.)  Young

asked if Bland's husband approved of her profession. (Tr. 32:25.) Young asked Bland if she liked to be watched while she masturbated, (Tr. 33:1), and he asked her if she liked to have sex with more than one partner at the same time, (Tr. 33:4-5). Young told Bland he "knew more about [her] than her husband." (Tr. 33:18.) Bland did not tell Young she objected to these questions because she was "shocked, just bombshelled," and she did not complain to anyone after she left the interview out of fear that he would not recommend her for employment. (Tr. 34:1-7, 13-15.)

From January 2002 to July 2002, Bland attended the Department's recruit training academy. (Tr. 36:12-24.) Recruits at the academy were not permitted to speak with field personnel or to receive phone calls. (Tr. 36:25-3.) Nonetheless, Young called Bland while she was at the academy. (Tr. 37:4-7.) Bland did not ask Young to call her, and she would know Young called when she was paged over the loudspeaker. (Tr. 37:8-11.)

In these calls, Young always asked the same questions. (Tr. 37:12-13.) He asked Bland how her family was, how her husband was, and how her marriage was. (Tr. 37:13-15.) Young would remind Bland that he knew more about her than her husband. (Tr. 37:15-16.) Young would ask Bland if she would go with him to a sex store called Night Dreams, which she did not know about

until Young told her about it.  (Tr. 37:16-24.)  Young made "three or four" phone calls like this while Bland was in the academy, from January to July 2002.  (Tr. 38:10-11.)  Bland did not report these calls to anyone for fear of losing her job. (Tr. 38:2-6.)

From July 2002 to June 2003, Bland was assigned to Fire Station 1 in McLean, (Tr. 39:1-4, 44:4), and she was a probationary firefighter during this period.  (Tr. 40:12-14.) While she was at Fire Station 1, Young called Bland "three or four times."  (Tr. 41:14-16.)  Young's calls were as they were while Bland was at the academy; he would ask how she was, how her family, husband, and marriage were, tell her he knew all about her, and asked her to reconsider her decision not to go to the sex store.  (Tr. 42:1-4.)  Bland did not report these calls out of fear of being seen as a whiner or complainer.  (Tr. 43:8-13.)

On November 9, 2007, Bland next came in contact with Young when he happened to work an overtime shift to replace Bland's captain, who was out sick.  (Tr. 68:8-15.)  Young approached Bland and asked how her family and children were, but said he would "stop right there."  (Tr. 71:9-13.)  Young also told Bland he knew all about her and knew things about her. (Tr. 71:13-14.)  Throughout the day, Young made sexual innuendo. (Tr. 71:15-16.)  Young asked Bland to drive the crew across the

street from the fire station to get ice cream, and she told him she would "be happy to drive [his] fat a** across the street," to which he replied "oh, so, you are checking out my a**." (Tr. 73:1-9.)

On November 25,[3] 2007, Bland next came in contact with Young when her crew went to the scene of a fire to relieve the crew already there. (Tr. 74:23-25, 75:13-15.) While Bland was standing by the fire engine, Young walked by carrying a "pike pole," which is six-foot long pole used for hooking onto walls or ceilings to pull off sheetrock. (Tr. 77:9-24, 78:23-25.) Bland testified that Young came by her holding the pike pole, and as he walked past her, he looked at her, jiggled the pole, and said "this looks like it would hurt." (Tr. 78:5-7, 114:6-8.) Bland told everyone on her shift about the incident. (Tr. 80:16-20.) Later that day, Young made a sexual comment while he and Bland were loading the fire hose back into the engine. (Tr. 93:7-11.)

With this evidence in mind, Defendant argues that Young's conduct "was not sufficiently severe to create an objectively hostile work environment." (Mem. at 8.) The Court disagrees. Drawing all reasonable inferences in the light most favorable to Plaintiff, *Lack*, 240 F.3d at 259, a reasonable jury

---

[3] There appears to be some confusion in the record as to the exact date of this incident. The transcript lists the date as November 24 in certain places and November 25 in others. In their papers, Defendant dates it as November 25, and Plaintiff dates it as November 27.

could have found Young's conduct severe.  The interview and pike pole incidents, in particular, are more than merely boorish or callous behavior and well-beyond workplace banter or joking. The interview incident is, perhaps, a paradigmatic example of sexual harassment, considering the relative positions of interviewer and applicant and the obviously intrusive and explicit questions asked by Young.  The pike pole incident, considering the circumstance of Young and Bland's prior interaction, where Young held up a six-foot pole used to break through dry-wall and told Bland that it looked like it would hurt, reasonably could be viewed as threatening.  A Rule 50(b) "motion must be granted 'if a reasonable jury could *only reach one conclusion based on the evidence.*'"  *Trident Enters.*, 2011 WL 2160953, at *3 (emphasis added) (quoting *Myrick*, 395 F.3d at 489).  Though reasonable jurors might differ in their view of this evidence, a reasonable jury could not "only reach one conclusion" based on it.  *Id.*  "If reasonable minds could differ, [the court] must affirm the jury's verdict." *Pitrolo*, 407 F. App'x at 659 (citing *Columbia Colleton Med. Ctr.*, 290 F.3d at).

In response to Young's comments during the interview, the County argues that "[a]lthough Young's comments . . . could be considered highly personal, because there was no witness to the comments, they could not be intended to ridicule [Bland]."

12

(Mem. at 8.)  The County cites *EEOC v. Fairbrook Medical Clinic, P.A.*, 609 F.3d 320 (4th Cir. 2010), in support.  *Id*.  The County misreads *Fairbrook*.  Though *Fairbrook* states that "there is a difference between generalized statements that pollute the work environment and personal gender-based remarks that single out individuals for ridicule," the latter of which "have a greater impact on their listeners and thus are more severe forms of harassment," nothing in *Fairbrook requires* comments to be ridiculing in order to be severe.  *Fairbrook*, 609 F.3d at 328-29.  All that is required is that, judged from the perspective of a reasonable person in the plaintiff's position and considering *all the circumstances*, *Ziskie*, 547 F.3d at 224, the conduct was severe.  Here, a reasonable jury could find Young's comments in the interview to be severe.  He was an interviewer who asked an applicant whether she liked to have sex with more than one partner at a time and whether she liked to be watched while she masturbated.  This is "more than general crudity," *Fairbrook*, 609 F.3d at 328, and a reasonable juror could have found it severe.

Defendant also argues that "[i]f Young's comments during [Bland's] interview had not been obviously sexual, the nature of the other remarks he made would be ambiguous.  In fact, without the remarks during the interview, there would be no basis whatsoever for the Court to conclude that his other

remarks were sexual." (Supp. at 16-17.) That may be true, *if* Young's comments in Bland's interview were not clearly sexual. But, they *were* indisputably sexual. Thus, the nature of that first incident is one of the "constellation of surrounding circumstances, expectations, and relationships," *Jennings*, 482 F.3d at 696, that a reasonable juror must take into account when evaluating the evidence of other instances. Because of the sexually charged nature of Young's comments in Bland's interview, a reasonable juror could view later comments that might *otherwise* be ambiguous as clearly sexual.

Defendant cites *Conner v. Schrader-Bridgeport Intern., Inc.*, 227 F.3d 179 (4th Cir. 2000), in support, arguing that the conduct Bland experienced "stands in stark contrast to the severe conduct experienced by the plaintiff in *Conner*." (Mem. at 8.) In *Conner*, the Fourth Circuit found as severe the following: the plaintiff was denied the necessary training to perform her job and was inequitably assigned to perform more difficult tasks, was required to expose her uterine blood to a coworker in view of other coworkers, she was asked if she was "on the rag," was asked if she "got any last night," and was regularly "mock[ed]" while she mopped the floor. *Conner*, 227 F.3d at 197. The evidence in *Conner*, particularly the blood, is severe, but the Court finds that this conduct is not "in stark contrast" to the conduct experienced by Bland. Indeed, the

14

*Conner* comments are, if anything, less sexually explicit than those during Bland's interview, and *Conner* does not have an incident that could be viewed as threatening.

Defendant also relies on *Whitten v. Fred's, Inc.*, 601 F.3d 231 (4th Cir. 2010), arguing that "[n]one of Young's conduct came close to approximating the conduct that [the plaintiff in *Whitten*] experienced." (Mem. at 9.) In *Whitten*, the plaintiff worked at a store for two days, in which another employee made it clear that he was unhappy that plaintiff had been transferred to his store, repeatedly called her dumb and stupid, told her that he did not want her working in his store, and told her that he would make her life a "living hell" if she ever took work matters "over his head." *Whitten*, 601 F.3d at 236. That same male employee, once each in the two days, "walked behind [plaintiff] in the office and pressed his genitals against her back as he passed by." *Id*. The Court finds the conduct Bland experienced at least "comes close to approximating" that in *Whitten*. Though Young never touched Bland, as stated above the pike pole incident reasonably could be viewed as threatening.

Defendant also argues that the sole witness to the pike pole incident, other than Bland and Young, Nancy Sanfacon, testified that Young was being playful and not threatening when Young said the pike pole looked like it would hurt. (Supp. at

15

6.)  According to Defendant, Sanfacon's perception of the incident is that "of an objectively reasonable person."  (Supp. at 7.)  Sanfacon's view may very well be *a* reasonable view, but it is not *the only* reasonable view.  Again, a Rule 50(b) "motion must be granted 'if a reasonable jury could *only reach one conclusion based on the evidence*.'"  *Trident Enters.*, 2011 WL 2160953, at *3 (quoting *Myrick*, 395 F.3d at 489).  Though reasonable jurors might differ in their view of this evidence, a reasonable jury could not "only reach one conclusion" based on it.  *Id.*  "If reasonable minds could differ, [the court] must affirm the jury's verdict."  *Pitrolo*, 407 F. App'x at 659 (citing *Columbia Colleton Med. Ctr.*, 290 F.3d at ).

Defendant also makes much of the fact that Bland testified on direct examination that she took Young's "this looks like it would hurt" comment with the pike pole as a threat of sexual assault, but Bland testified that during the Department's investigation she told the investigator that Young did not make any sexual gesture with the pike pole.  (Supp. at 7.)  Even granting Defendant's premise that this undermines Bland's trial testimony, this may go to Bland's *subjective* view of the incident, but does not affect what an objective, reasonable juror would find in viewing the evidence on this pike pole incident.  Moreover, "Rule 50(b) does not permit the court to weigh the evidence or assess the credibility of the

16

witnesses," *Pitrolo*, 407 F. App'x at 659, so to the extent Defendant suggests any perceived inconsistency on Bland's part undermines her direct testimony, that is not relevant here.  The only question before the Court in reviewing a Rule 50(b) motion is whether a reasonable jury could have reached the conclusion that it did.

These interview and pike pole incidents are not the only evidence in the record.  Young's unwelcome phone calls, as detailed above, were not in and of themselves particularly severe.  As the Fourth Circuit has stated, however, "[t]he more serious incidents enumerated [above]," *i.e.*, the interview and pike pole incidents, "were complemented by numerous additional occurrences that, in isolation, may have seemed less problematic, but which actually served to exacerbate the severity of the situation.  Reviewed and considered cumulatively, the unwelcome conduct here was clearly of sufficient severity to support the jury's verdict against [Defendant]." *Conner*, 227 F.3d at 197-98.  The phone calls, at least, form part of the circumstances "constellation of surrounding circumstances . . . and relationships," *Jennings*, 482 F.3d at 696, that a reasonably jury could consider when viewing the evidence.

Defendant makes much of the intermittent occurrences of Young's conduct.  If the standard were "severe *and*

pervasive," there might be something to that argument.  The standard, however, is "severe *or* pervasive."  And, for the reasons stated above, a reasonable juror could find Young's conduct was sufficiently severe.

In sum, the Court finds that, viewing the evidence and drawing all reasonable inferences in the light most favorable to Plaintiff, *Lack*, 240 F.3d at 259, the County has not met its "hefty burden" in establishing that the evidence is insufficient to uphold the jury's verdict, *Price*, 93 F.3d at 1349.

ii.   Imputing Liability to the County

Plaintiff must also have proven "'that the offending conduct . . . was imputable to her employer.'"  *Ziskie*, 547 F.3d at 224 (citing *Ocheltree*, 335 F.3d at 331).  "In a case where an employee is sexually harassed by a coworker[4] . . . the employer may be liable only 'if it *knew or should have known* about the harassment *and* failed to take effective action to stop it.'"  *Howard v. Winter*, 446 F.3d 559, 565 (4th Cir. 2006) (emphasis

---

[4] Defendant argues for the affirmative defense provided in *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), and *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998).  That affirmative defense is inapplicable to the co-worker harassment in this case.  *See Matvia v. Bald Head Island Mgmt., Inc.*, 259 F.3d 261, 266 (4th Cir. 2001) (stating that "[t]he affirmative defense of *Faragher* and *Ellerth* allows an employer to avoid strict liability for a *supervisor's* sexual harassment") (emphasis added); *Alford v. Martin & Gass, Inc.*, No. 1:08cv595, 2009 WL 497581, at *6 (E.D. Va. Feb. 25, 2009) (Brinkema, J.) (stating that because an "incident was perpetrated by non-supervisory co-workers," *Faragher/Ellerth* did not apply to that incident).  For example, in *Barrett v. Applied Radiant Energy Corp.*, 240 F.3d 262 (4th Cir. 2001), cited by Defendant in support as an application of *Faragher/Ellerth*, the alleged harasser was the plaintiff's "former supervisor."  240 F.3d at 264.  That is not to say Defendant is strictly liable here, it is only to say that Defendant may be liable in negligence as set forth below and that *Faragher/Ellerth* is not the correct rubric with which to determine that liability.

added) (quoting *Ocheltree*, 335 F.3d at 334); *accord Hoyle v.
Freightliner, LLC*, --- F.3d ----, No. 09-2024, 2011 WL 1206658,
at *9 (4th Cir. Apr. 1, 2011) ("In a case where an employee is
sexually harassed by a co-worker, the employer may be liable in
negligence if it knew or should have known about the harassment
and failed to take effective action to stop it.")  "But '[t]he
law against harassment is not self-enforcing and an employer
cannot be expected to correct harassment unless the employee
makes a concerted effort to inform the employer that a problem
exists.'"  *Howard*, 446 F.3d at 567 (quoting *Barrett v. Applied
Radiant Energy Corp.*, 240 F.3d 262, 268 (4th Cir. 2001)).
Ultimately, the Court "must determine when the [County] had
actual or constructive notice of [Young's] alleged harassing
behavior and whether the [County's] response was reasonable once
such notice was provided."  *Howard*, 446 F.3d at 567.

    With respect to the reasonable-response prong, where,
as here, the defendant has an anti-harassment policy, (D. Ex.
17; admitted at Tr. 553:23-554:2), "the distribution of an anti-
harassment policy provides 'compelling proof' that the
[employer] exercised reasonable care in preventing and
correcting harassment."  *Hoyle*, 2011 WL 1206658, at *9 (quoting
*Barrett*, 240 F.3d at 266).  "To sustain her claim, a plaintiff
must show by a preponderance of the evidence that the policy was
either adopted or administered in bad faith or that it was

19

otherwise defective or dysfunctional." *Id.* (citing *Barrett*,
240 F.3d at 266).

Here, viewing the evidence in and drawing all
reasonable inferences in the light most favorable to Bland,
*Lack*, 240 F.3d at 259, a reasonable jury could have found that
liability should be imputed to Defendant.  Defendant makes much
of the fact that after Bland reported Young's conduct in
November 2007, Young's conduct stopped.  (Mem. at 13.)  If
Defendant was not on actual or constructive notice of the
harassment before that time, that would be well and good.  But
Bland testified that in *March of 2006* she told then-captain and
station commander Edith Eshelman about Young's conduct during
the recruiting interview, during the academy, and during her
probationary period.  (Tr. 66:16-67:7.)  The record shows that
the pike pole incident occurred on November 25, 2007.  (Tr.
74:25-78:22.)  Thus, the Court "must determine when the [County]
had actual or constructive notice of [Young's] alleged harassing
behavior and whether the [County's] response was reasonable once
such notice was provided."  *Howard*, 446 F.3d at 567.  On the
evidence in the record, a reasonable jury could find that the
County had notice in March of 2006 and did not reasonably
respond after that notice.

As to notice, a reasonable jury could find that
Bland's telling Eshelman put the County on (at least)

20

constructive notice.  Eshelman, now a chief, was at that time

the Fire Station 17 station commander and a captain.  (Tr.

429:12-13-430:1.)  Telling a supervisory station commander who

is a captain would put the County on notice.  "Knowledge of

harassment can be imputed to an employer if a reasonable person,

intent on complying with Title VII, would have known about the

harassment."  *Ocheltree*, 335 F.3d at 334.  Indeed, Eshelman

testified that officers in the Department are required to report

claims of sexual harassment and that she did not make a report

about what Bland told her in March 2006.  (Tr. 432:15-21.)

Eshelman did not report Bland's allegation because she thought

it was "too old."  (Tr. 433:2-3.)

     Moreover, Eshelman testified that she told her

battalion chief, whom she acknowledges is supposed to report

alleged incidents up the chain of command, but to her knowledge

he did not do so, (Tr. 433:10-25), and there is no evidence in

the record that the battalion chief did anything in response to

Bland's report to Eshelman.  Eshelman's response to Bland's

report was to have Young moved to another station that day so

that he would not come in contact with Bland.  (Tr. 431:21-

432:1.)  Eshelman testified that she did not hear anything else

about Bland's report to her.  (Tr. 434:4-6.)  Additionally,

Defendant's sexual harassment policy, (D. Ex. 17; admitted at

Tr. 553:23-554:2), states that "supervisory personal *shall*

21

promptly and thoroughly investigate *all* instances of *suspected or reported* sexual harassment." (emphasis added.) That is, a supervisor, such as Eshelman, is *required* by the County's sexual harassment policy to act on any reports of harassment, including, as she testified, reporting that conduct up the chain of command.

As to "whether the [County's] response was reasonable once such notice was provided," *Howard*, 446 F.3d at 567, after Bland told Eshelman, Eshelman admitted that neither she nor her battalion chief did anything in response. Eshelman had Young moved to a different station for that day, but did nothing further. Eshelman's battalion chief apparently did nothing at all. Regardless of what may constitute a reasonable response in general, a reasonably jury could find that this was not it.

Nor, as the County argues, (Mem. at 10), does the County's policy itself suffice to show the County "exercised reasonable care in preventing and correcting harassment." *Hoyle*, 2011 WL 1206658, at *9. The County's policy on sexual harassment, (D. Ex. 17), states that "supervisory personal *shall* promptly and thoroughly investigate *all* instances of *suspected or reported* sexual harassment." (emphasis added.) And, the Department standard operating procedure of sexual harassment, (D. Ex. 23; admitted at Tr. 561:19-562:1), states that "[s]upervisors are required to take *positive, corrective actions*

22

to ensure that sexually harassing behavior or acts do not occur *and are not repeated* in the work place." (emphasis added.)

Eshelman, and the battalion chief to whom she reported Bland's allegations, did not "promptly and thoroughly investigate" Bland's claim, (D. Ex. 17), nor did they "take *positive,* corrective actions to ensure that [Young's] sexually harassing behavior or acts . . . [were] *not repeated* in the work place," (D. Ex. 23), as required by the policy Defendant argues constitutes reasonable care in preventing and correcting harassment. The Department's policy surely *could have* constituted reasonable care, but where "a plaintiff . . . show[s] by a preponderance of the evidence that the policy was . . . defective or dysfunctional," *Hoyle*, 2011 WL 1206658, at *9, the policy alone will not suffice as reasonable care. Because Eshelman and her battalion chief, however well-intentioned, plainly violated the County and Department's policy *mandating* investigation and positive, corrective action, a reasonable jury could find that the policy was, in this instance, defective or dysfunctional.

Defendant also argues that "Bland's failure to report Young's conduct during the August 22, 2001, interview for four and a half years shows that Bland failed to take advantage of the policies and procedures for reporting harassment, and her failure to take advantage of the existing policies was

unreasonable." (Mem. at 12.) It is true that "'[t]he law against harassment is not self-enforcing and an employer cannot be expected to correct harassment unless the employee makes a concerted effort to inform the employer that a problem exists.'" *Howard*, 446 F.3d at 567 (quoting *Barrett*, 240 F.3d 262 at 268). Here, however, Bland *did* inform her employer of Young's conduct when she told her station-commander captain, who was then required to act and to report the alleged harassment, and who also told the battalion chief who has the same duties. There is therefore no issue of whether Bland made an effort to notify her employer; she did so, thereby providing at least the constructive notice required for imputing liability to Defendant, and a reasonable jury could have found sufficient evidence of that imputability and, as stated, a lack of a reasonable response.

B. Rule 59(a)

i. New Trial

Defendant moves for a new trial under Rule 59(a), (Mem. at 14), or, in the alternative, for a remittitur of the jury's verdict, (Supp. at 30). "On a Rule 59(a) motion, a district court may set aside the jury's verdict and grant a new trial only if '(1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice even though there

may be substantial evidence which would prevent the direction of a verdict.'" *Attard Indus.*, 2010 WL 4670704, at *2 (quoting *Atlas Food Sys.*, 99 F.3d at 594).  In considering a Rule 59 motion, "courts may make credibility judgments in determining the clear weight of the evidence." *Id*. (citing *Knussman*, 272 F.3d at 647).

For the same reasons set forth above with respect to Defendant's Rule 50(b) motion, and considering the credibility of the witnesses, Defendant has not shown that the verdict is against the clear weight of the evidence, is based upon evidence which is false, or will result in a miscarriage of justice. Thus, the Court will not grant a new trial.

The Court will, however, grant Defendant's motion for remittitur, "because the jury's award was excessive, in that the amount was too large considering there was no evidence that [Plaintiff] received any medical treatment . . . and the jury award was inconsistent with similar federal cases." *Bennett*, 432 F. Supp. 2d at 602.

Even though the Court finds the jury award to be excessive, the Court will not grant a new trial based on the jury award.  Defendant argues that a new trial is appropriate because the jury's award was the result of passion or prejudice. (Mem. at 19.)  "Fourth Circuit has held that, to receive a new trial on liability and damages, the jury verdict must be made

excessive by 'passion and prejudice springing from indulgence, in the jury room, in such feelings, [that] may not be cured by a remittitur, but only a new trial.'" *Bennett*, 432 F. Supp. 2d at 602 (quoting *Ford Motor Co. v. Mahone*, 205 F.2d 267, 273 (4th Cir. 1953)). "[T]he sheer size of a jury award does not, by itself, demonstrate that it was the result of passion or prejudice." *Id.* at 604.

Here, with the exception of its own conclusory assertions, Defendant has presented no evidence that the verdict was solely the result of the jury's passion or prejudice. "[W]ithout additional evidence of passion and prejudice by the jury, an excessive verdict alone is insufficient to require a new trial." *Id.* at 603. Nor, as Defendant argues, are the issues of liability and damages so interconnected as to prevent a fair determination of damages apart from evidence of liability. (Mem. at 20.) The Court finds that the jury's verdict as to liability was reasonable, as stated above, and the jury's damages award can be fairly addressed by an order of remittitur.

     ii.    <u>Remittitur</u>

"Under Title VII, compensatory damages are available for, among other things, 'emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.'" *Homesley v. Freightliner Corp.*, 61

F. App'x 105, 116 (4th Cir. 2003) (quoting 42 U.S.C. §
1981a(b)(3)).  "[M]edical evidence need not be adduced to
support compensatory damages." *Bennett*, 432 F. Supp. 2d at 603
n.2.  "The Fourth Circuit has held that 'a plaintiff's
testimony, standing alone, may support a claim of emotional
distress precipitated by a constitutional violation.'" *Id.*
(citing *Price*, 93 F.3d at 1241, 1251).  The plaintiff's
"testimony must 'establish that the plaintiff suffered
demonstrable emotional distress, which must be sufficiently
articulated.'" *Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d
536, 546-47 (4th Cir. 2003) (quoting *Price*, 93 F.3d at 1254).
"The testimony cannot rely on 'conclusory statements that the
plaintiff suffered emotional distress' or the mere fact that the
plaintiff was wronged," but rather "it must indicate with
specificity 'how [the plaintiff's] alleged distress manifested
itself.'" *Id.* at 547 (quoting *Price*, 93 F.3d at 1254).  "The
plaintiff must also 'show a causal connection between the
violation and her emotional distress.'" *Id.* (quoting *Columbia
Colleton Med. Ctr.*, 290 F.3d at 653).

Bland testified that, as a result of Young's conduct,
she suffered "[t]remendous headaches, chest pains with anxiety."
(Tr. 96:7-9.)  Bland also testified that she had problems
sleeping.  (Tr. 97:1-2.)  She testified that she took an
antidepressant for a "brief period of time," but stopped because

of the side-effects.  (Tr. 96:10-15.)  She also took medications for her headaches.  (Tr. 96:18-19.)

Bland also testified that her job that she "loved" had been "tainted."  (Tr. 93:25-94:1.)  She "shut down" and "did not engage in any fire department activities at all."  (Tr. 92:15-16.)  Bland also testified that she was in "continual[] fear[]" of running into Young.  (Tr. 86:9-10.)

Bland could not recall the specific date when her headaches started, but it was while she was at Fire Station 17, (Tr. 129:2-4), to which she moved in March 2006, (Tr. 66:13-21). Bland stated that the headaches "probably" began before November 2007, but intensified and became more frequent afterwards.  (Tr. 129:5-7.)  Bland could not remember when she began taking sleeping medication, but it was while she was at Fire Station 17.  (Tr. 129:8-12.)  Bland began taking medicine for chest pain and anxiety only two weeks before trial.  (Tr. 129:20-130:3.)

Bland's testimony was corroborated by a co-worker, Alyssa Vance, and her husband, Mica Bland.  Vance testified to Bland's change in personality, stating that after November 2007, Bland became "a little more distracted at work . . . a little bit more withdrawn."  (Tr. 359:20-23.)  Vance stated that though Bland used to actively participate and volunteer, Bland no longer participated or volunteered in activities at the fire station and sometimes cleaned the fire engine by herself.  (Tr.

359:23-360:1.)  Vance, however, acknowledged that at during the
same time period, Bland was going through a divorce and had
requested a station transfer.  (Tr. 364:2-4, 18-20.)

        Mica Bland testified that he noticed changes in
Bland's personality after the pike pole incident, stating that
she is "scared now," anxious, cries at unexplained times for no
known reason, and is distracted.  (Tr. 325:11-326:2.)  Mica
Bland also testified that Bland will sometimes grab her chest
while having a tough time breathing.  (Tr. 326:5-6.)

        The evidence as to damages is relatively thin.  That
said, making the permitted credibility determination, *Attard
Indus.*, 2010 WL 4670704, at *2, the Court finds that Bland was a
wholly credible witness on the issue of her own distress,
particularly in light of her demeanor on the witness stand.
Bland's testimony establishes that she suffered demonstrable
emotional distress, which was sufficiently articulated.  *Bryant*,
333 F.3d at 546-47.  She indicated how the distress manifested
itself, *id.* at 547, and showed sufficient causation, when viewed
in light of her credibility and demeanor on the witness stand.

        The jury's damages award, however, was excessive.  As
Judge Lee noted in *Bennett*, "[i]n employment discrimination
cases involving remittitur, the Fourth Circuit has found that
verdicts, where compensatory damages were not supported by
medical evidence and that were over $100,000.00, were

                            29

excessive." 432 F. Supp. 2d at 602 (collecting cases). *Bennett* and the Fourth Circuit's decision in *Hetzel v. County of Prince William*, 89 F.3d 169 (4th Cir. 1996), are instructive.

In *Bennett*, the jury awarded the plaintiff $540,000.00. 432 F. Supp. 2d at 601. The plaintiff in *Bennett* testified at trial that he was humiliated by not receiving a promotion and because of his humiliation he had to leave his position, for which he later reapplied. *Id.* at 605. The plaintiff also testified that he suffered chronic headaches, insomnia, and stomach problems, and testified that he did not seek medical treatment for any of those conditions. *Id.* Considering this evidence, and the fact that the plaintiff was owed back-pay in the amount of $5,000.00, Judge Lee remitted the award to $50,000.00. *Id.*

In *Hetzel*, the plaintiff testified that she suffered headaches, stress, and problems with her family life as a result of the defendant's conduct. 89 F.3d at 171. The plaintiff testified that although she had been devastated and humiliated, she had not seen a doctor, therapist, or other professional. *Id.* The jury awarded the plaintiff $750,000.00 in damages for emotional distress, which the district court reduced to $500,000.00. *Id.* at 170. The Fourth Circuit found that the "thin evidence of rather limited damages would in-and-of itself entitle her to only a minimal damage award for intangible

30

injuries" and remanded the case for a remittitur of the jury award. *Id*. at 171.  The district court reduced the plaintiff's damages award to $15,000.00.[5]  *See Hetzel v. Cnty. of Prince William*, No. 98-1514, 1999 WL 623195, *2 (4th Cir. Aug. 17 1999).

In a recent case, however, the Fourth Circuit affirmed a district court's denial of motion for remittitur of a $225,000.00 jury verdict awarded for pain, suffering, and mental anguish.  *See Blake v. Baltimore Cnty.*, No. L-07-50 at Dkt. 203, (D. Md. July 14, 2010).[6]  In *Blake*, the plaintiff was forced by his employer, the Baltimore County Police Department, to undergo a fitness-for-duty medical evaluation.  *Id*.  At trial, the plaintiff testified as to his own "rise in blood pressure," how he was "perturbed," "angry," and "worried," and how the procedure impacted him at work and at home.  *Id*.  The plaintiff's testimony was supplemented by that of his wife and of a co-worker and, significantly, the plaintiff's treating physician testified about the physical, objective manifestations of the plaintiff's emotional distress.  *Id*.  The jury awarded

---

[5] It is worth noting that this was not the end of the *Hetzel* case.  The Supreme Court held that Judge Brinkema "correctly afforded [the plaintiff] the option of a new trial when [the District Court] entered judgment for the reduced damages" as directed by the Fourth Circuit.  *Hetzel v. Prince William Cnty.*, 523 U.S. 208, 211 (1998).  The plaintiff elected the option of a new trial, and the jury returned a verdict in the amount of $45,000.00.  *See Hetzel v. Cnty. Of Prince William*, 1:94cv919 [Dkt. 251].  The defendant moved for judgment as a matter of law or to set aside the verdict, 1:94cv919 [Dkt. 257], which this Court denied, 1:94cv919 [Dkt. 266].  The defendant did not appeal that decision.
[6] Plaintiff provided the Court and Defendant a copy of the district court's remittitur decision in *Blake*, [Dkt. 121-4].

$225,000.00 for pain and suffering and the district court denied the defendant's motion for remittitur. *Id.* The Fourth Circuit affirmed the district court's denial. *Blake v. Baltimore Cnty.*, No. 10-1849, 2011 WL 2784123, at *1 (4th Cir. July 15, 2011). Though *Blake* is distinguishable, particularly with respect to the testimony of the treating physician, the Court bears that recent case in mind here.

The evidence presented here is substantially similar to that in *Bennett* and *Hetzel*. Bland testified that she suffered tremendous headaches, chest pains, anxiety, and problems sleeping. She testified that she took an antidepressant for a brief period and took medications for her headaches. Bland also testified that her job performance and enjoyment were affected, testimony corroborated by Vance and Mica Bland, and that she was in fear of running into Young. Bland, though, did not testify with particular specificity as to the dates of her medicine use, and there is testimony that Bland was going through a contemporaneous divorce. Bland did not seek medical treatment, and, significantly, did not lose any pay or otherwise face adverse employment action in that sense.

This evidence, coupled with the jury's verdict, illustrates that the award was excessive, as it was not proportional to Bland's injuries and inconsistent with similar cases. The Court finds that an award somewhere between that in

32

*Hetzel*, as that case is over 12-years old, and *Bennett* is appropriate.   As Judge Lee noted in *Bennett*, there is no "specific formula to provide the district courts more guidance" on how to determine the proper award.   432 F. Supp. 2d at 601; *see also Pine Ridge Coal Co. v. Local 8377, United Mine Workers of America*, 187 F.3d 415, 421 (4th Cir. 1999) ("Once a party has established the fact of damages, the court may estimate damages based on just and reasonable inferences drawn from the evidence submitted.")   With that in mind, the Court remits the jury award to $50,000.00, which it believes is proportional to the injury sustained and within precedent, particularly *Bennett* and *Hetzel*, as stated above, while taking *Blake* into account.

      C.   <u>Rule 59(e)</u>

      Defendant also moves the Court to alter or amend the judgment pursuant to Rule 59(e).   "[T]here are only three grounds for granting a motion to alter or amend a judgment [under Rule 59(e)]: '(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice.'"   *Hart*, 2011 WL 1791297, at *1 (quoting *Hutchinson*, 994 F.2d at 1081.   Defendant, apparently (it does not say), argues only that this Court has made a clear error of

law or that the verdict is manifestly unjust.[7]   For the reasons

stated above with respect to Defendant's Rule 50(b) and 59(a)

arguments, there was no clear error of law and no manifest

injustice in this case.   Thus, Defendant has shown that the

"extraordinary remedy" of a Rule 59(e) motion, "which should be

used sparingly," *Hart*, 2011 WL 1791297, at *1, is appropriate

here.

## IV.   Conclusion

For these reasons, the Court will deny Defendant's

Motion but will order remittitur of the jury award.

An appropriate Order will issue.


| | /s/ |
| --- | --- |
| August 3, 2011 | James C. Cacheris |
| Alexandria, Virginia | UNITED STATES DISTRICT COURT JUDGE |

---

[7] There was, to this Court's knowledge, no intervening change in controlling law or new evidence not available at trial, and Defendant presents no argument as to either.