IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

MARY GETTS BLAND           )
                           )
     Plaintiff,            )
                           )
     v.                    )   1:10cv1030 (JCC/JFA)
                           )
FAIRFAX COUNTY,            )
                           )
     Defendant.            )

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Plaintiff Mary Getts Bland's Petition for Award of Costs Including Reasonable Attorneys' Fees (the Petition). For the following reasons, the Court will grant fees and costs in the amount of $306,705.69.

**I.  Background**

A.  Factual Background

This case concerns incidents of sexual harassment by a male Fairfax County firefighter in the Fairfax County Fire and Rescue Department against a female firefighter. Plaintiff alleged that by allowing Lieutenant Timothy Young to harass her, the Defendant Fairfax County, Virginia (the County) violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e to e17 (Title VII). Plaintiff prevailed in her Title VII hostile work environment claim, as a jury awarded her

1

$250,000 in damages [Dkt. 75], which the Court later remitted to
$50,000 [Dkt. 126].  Plaintiff now seeks to recover attorneys'
fees and costs pursuant to Title VII.  [Dkt. 134.]

       B.   <u>Procedural Background</u>

       Plaintiff filed suit against the County on September
15, 2010.  [Dkt 1.]  Plaintiff originally asserted three claims,
but on May 3, 2011, the Court granted Defendant's Motion for
Summary Judgment [Dkt. 8] with respect to Plaintiff's claims
that the County was liable for violating the Fourteenth
Amendment's Equal Protection Clause under 42 U.S.C. § 1983 and
that the County was liable for retaliation under Title VII and
the Equal Protection Clause.  [Dkt. 35.]  The Court, however,
denied the Motion for Summary Judgment with respect to
Plaintiff's Title VII hostile work environment claim involving
sexual harassment.  [Dkt. 35.]

       Jury trial began on May 23, 2011.  On May 24, 2011,
after the close of Plaintiff's case, Defendant orally made a
motion to dismiss Plaintiff's case as time-barred, after which
Defendant filed a corresponding written motion (the Motion to
Dismiss as Time-Barred).  [Dkt. 70.]  The Court took the motion
under advisement, permitting the trial to be completed so that
the record would be complete.

       On May 25, 2011, the jury returned a verdict in favor
of Plaintiff in the amount of $250,000, and the Clerk of the

Court entered a judgment in favor of Plaintiff. [Dkt. 77.]
After the jury was discharged, the Court addressed the Motion to
Dismiss as Time-Barred and the parties request for further
briefing and a hearing on the issue. (Jury Instructions Partial
Tr. [Dkt. 123] (J. I. Tr.) 26:13-27:21.) At that time,
Plaintiff's counsel orally requested an extension of time to
file a request for attorneys' fees. (J. I. Tr. 27:20-28:17.)
The Court stated that it would set a date to file such a request
after it heard argument on the Motion to Dismiss as Time-Barred
and determined whether the judgment would stand. (J. I. Tr.
27:20-28:17.)

    With leave of the Court, both Plaintiff, [Dkt. 72],
and Defendant, [Dkt. 70], filed written briefs on the time-
barred issue. Defendant filed further briefing on June 3, 2011.
[Dkt. 78.] There, Defendant went beyond the time-barred issue
and argued, for the first time in this case, that the Court
lacked jurisdiction over the matter due to Plaintiff's failure
to allege exhaustion of her administrative remedies. (D. Supp.
Mem. [Dkt. 78] at 2-3.) Because Defendant had not previously
raised this issue at any point, and had not done so in its mid-
trial Motion to Dismiss as Time-Barred, the Court ordered
Plaintiff to respond and Defendant to reply. [Dkt. 79.]
Plaintiff, [Dkt. 80], and Defendant, [Dkt. 85], did so. The
Court held oral argument on June 17, 2011, and took the issue

3

under advisement.  [Dkt. 91.]  On June 29, 2011, the Court

denied the Motion to Dismiss as Time-Barred both as to the time-

barred issue and jurisdictional issue.  [Dkt. 117.]

Prior to that denial, on June 22, 2011, Defendant

filed a Motion for Judgment as a Matter of Law, Motion for New

Trial, and Motion to Alter or Amend the Judgment.  [Dkt. 102.]

On August 3, 2011, the Court denied those motions, but granted

Defendants alternative motion for remittitur and remitted

Plaintiff's jury award to $50,000.  [Dkt. 126.]  The Court

directed Plaintiff to accept or reject the remittitur within ten

days and stated that if the remittitur is not accepted, "the

Court will stay the new trial pending any appeal by the parties.

. . ."  [Dkt. 126.]

On August 12, 2011, Plaintiff filed a Motion for

Reconsideration [Dkt. 127], which the Court denied on August 24,

2011 [Dkt. 130].  This time, the Court directed Plaintiff to

accept or reject the Court's order of remittitur by August 26,

2011.  [Dkt. 130.]  On August 26, 2011, Plaintiff accepted the

order of remittitur.  [Dkt. 131.]  On September 7, 2011, the

Court in a written order (the Counsel Fees Order) stated:

> Plaintiff having accepted the remitter in this case and
> therefore it is appropriate to award counsel fees to
> plaintiff, it is accordingly ORDERED:
>
> (1)  That the plaintiff shall file her petition for counsel
>      fees within fifteen (15) days of the date of this
>      order.

4

(2)  Defendant shall file its opposition within thirty (30) days of the date of this order.

(3) Any rebuttal briefs shall be filed within thirty five (35) days of the date of this order . . . .

[Dkt. 132.]

On September 22, 2011, Plaintiff filed the Petition for Award of Costs Including Reasonable Attorneys' Fees [Dkt. 133], which was corrected on September 23, 2011 [Dkt. 134].  On October 7, 2011, Defendant filed a Reply [Dkt. 135] and on October 13, 2011, Plaintiff filed a Rebuttal [Dkt. 139].  On October 26, 2011, Defendant filed a Supplemental Opposition [Dkt. 143] and Plaintiff filed a Supplemental Memorandum [Dkt. 144].  On October 31, 2011, Plaintiff filed a Second Supplement to the Petition.  [Dkt. 146.]

Plaintiff's Petition is before the Court.

## II.  Standard of Review

A. Attorneys' Fees Under the Civil Rights Act

The Civil Rights Attorney's Fees Awards Act provides that in federal civil rights actions, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . ."  42 U.S.C. § 1988(b).  "As the Supreme Court has recognized, 'the purpose of § 1988 is to ensure effective access to the judicial process for persons with civil rights grievances.'"  *Daly v. Hill*, 790 F.2d 1071, 1076 (4th Cir. 1986)

5

(quoting *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983)) (internal quotations omitted).

The Civil Rights Attorney's Fees Awards Act specifically states that such fees are permitted in "any action or proceeding to enforce provisions of . . . title VI of the Civil Rights Act of 1964." 42 U.S.C. § 1988. And, Title VII of the Civil Rights Act states that the court may allow the prevailing party a reasonable attorneys' fee as part of the costs. *See* 42 U.S.C. 2000e-5(k)(2006). The Fourth Circuit has noted, "[t]he standard for granting attorney's fees under 42 U.S.C. § 1988 is identical to that under Title VII." *Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343, 1359 n.10 (4th Cir. 1995)(citing *Hensley*, 461 U.S. at 433 n.7). Plaintiff petitions this Court for an award of the costs of bringing and prosecuting this civil action, including reasonable attorneys' fees, pursuant to Title VII.

B. <u>Attorneys' Fees Generally</u>

The party requesting fees bears the burden of demonstrating the reasonableness of what it seeks to recover. *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990); *Cook v. Andrews*, 7 F. Supp. 2d 733, 736 (E.D. Va. 1998). The fee applicant bears the burden of establishing by clear and convincing evidence the amount of a reasonable fee in the circumstances. *See Hensley*, 461 U.S. at 433.

The requesting party does so by producing evidence, such as the requesting attorneys' own affidavits.  "'In addition to the attorney's own affidavits, [however,] the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award.'"  *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 244 (4th Cir. 2009) (quoting *Plyler*, 902 F.2d at 277).  "Examples of what constitutes satisfactory specific evidence 'sufficient to verify the prevailing market rates are affidavits of other local lawyers who are familiar both with the skills of the fee applicants and more generally with the type of work in the relevant community.'"  *Textron Financial Corp. v. AIC of Manassas, Inc.*, No. 1:09-cv-1202, 2010 WL 2928789, at *4 (E.D. Va. July 23, 2010) (quoting *Robinson*, 560 F.3d at 245); *see also Plyler*, 902 F.2d at 278 ("[A]ffidavits testifying to [the fee applicants'] own rates, experience and skills as well as affidavits of South Carolina lawyers who were familiar both with the skills of some of the [fee] applicants and more generally with civil rights litigation in South Carolina . . . [were] sufficient evidence of the prevailing market rates.")

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  *Hensley*, 461 U.S. at 433; *Rum Creek Coal Sales, Inc. v.*

7

*Caperton*, 31 F.3d 169, 174 (4th Cir. 1994).  The product of the reasonable fee and reasonable rate is referred to as the "lodestar amount."  *See Daly v. Hill*, 790 F.2d at 1076 n.2.

In determining "what constitutes a 'reasonable' number of hours and rate . . . a district court's discretion should be guided by the . . . twelve factors" adopted from *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).  *Robinson*, 560 F.3d at 243-44 (citing *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978)).

Those *Johnson/Kimbrell's* factors are: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.  *Id.*  The Court need not address all twelve factors independently, because "such considerations are usually subsumed within the initial

8

calculation of hours reasonably expended at a reasonable hourly rate." *Freeman v. Potter*, No. 7:04cv276, 2006 WL 2631722, at *2 (W.D. Va. 2006) (citing *Hensley*, 461 U.S. at 434 n.9).

"After determining the lodestar figure, the court then should subtract fees for hours spent on unsuccessful claims unrelated to successful ones. . . . [O]nce the court has subtracted the fees incurred for unsuccessful, unrelated claims, it then awards some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *Robinson*, 560 F.3d at 244 (internal quotations and citations omitted).  Because the "degree of success obtained by the plaintiff is the 'most critical factor' in determining the reasonableness of a fee award, the district court 'may simply reduce the award to account for the limited success.'" *Lilienthal v. City of Suffolk*, 322 F. Supp. 2d 667, 675 (E.D. Va. 2004) (quoting *Hensley*, 461 U.S. at 436-37).  There is no "precise formula" for making this reduction to the lodestar amount; however, the court may either "reduce the overall award" or "identify specific hours that should be eliminated." *Hensley*, 461 U.S. at 436-37.

Attorneys' fees award decisions are within the discretion of the district court and are reviewed for abuse of discretion.  *See McDonnell v. Miller Oil Co.*, 134 F.3d 638, 640

(4th Cir. 1998).  Within this framework, the Court will evaluate the Petition.

### III. Analysis

A. <u>Timely Filing</u>

As a threshold issue, Defendant argues that Plaintiff's Petition is not timely under Federal Rule of Civil Procedure 54 and Local Rule 54(d)(1) and therefore must be denied.  (D. Reply [Dkt. 135] at 1.)  Turning first to the federal rule, Federal Rule of Civil Procedure 54(d)(2)(B)(i) states "[u]nless a statute or a court order provides otherwise, the motion [for attorneys' fees] must be filed no later than 14 days after entry of judgment."  Defendant argues that the 14 days runs from the date of the jury verdict, May 25, 2011.  As a result, Defendant submits that Plaintiff's filing on September 23, 2011, is not timely.  (D. Reply at 2.)

Defendant, however, overlooks Federal Rule of Civil Procedure 6(b)(1)(A), which states, "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time: with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires; . . . ."  The Fourth Circuit has stated that the filing of a fee petition under Federal Rule 54(d)(2)(B) "plainly constitutes an act 'required . . . to be done . . . within a specified time' under Federal Rule 6(b). . . ."

*Gaskins v. BFI Waste Services, LLC*, 281 F. App'x 255, 259, (4th Cir. 2008).  Thus, under Federal Rule 6(b), upon finding good cause, a court may extend the 14 day window required by Federal Rule 54(d), as long as the court does so or a request to do so is made within 14 days after the entry of judgment.  And, if a court chooses to do so, Federal Rule 54(d) requires it to, at some point, issue an order.

In this case, Mr. Shapiro requested that the Court extend the time on May 25, 2011, the day the jury returned the verdict and thus well before the 14 day window provided by Federal Rule 54(d) expired.[1]  (J. I. Tr. 27:22-28:25.)  The Court did not grant the request at the time, as it stated that upon considering the Defendant's Motion to Dismiss as Time-Barred, the Court would set the timeline for counsel fees when it determined whether the judgment would stand.  As a result, both parties were on notice that the time for filing an attorneys' fees request was being extended and neither party objected.

Thus, in accordance with Federal Rule 6(b)(1)(A), a request was made before the original window of 14 days expired

---

[1] This Court declines to address whether the 14 days runs from the entry of a jury verdict or from a later point in time, as counsel's request for an extension was made at the earliest relevant point in time.  Defendant argues that under *Jackson v. Beard*, 8282 F.2d 1077 (4th Cir. 1987), the 14 days runs from the entry of the jury verdict.  But the court in *Jackson v. Beard* focused on a local rule in the District of Maryland and the court's holding was called into question by *Cross v. Bragg*, 329 F. App'x 443 (4th Cir. 2009).  Furthermore, the Fourth Circuit in *Gaskins*, 281 F. App'x at 256-57, specifically addressed Rule 54(d)(2)(B) and indicated that the 14 days ran from the district court's memorandum opinion and order ruling on a motion for a judgment as a matter of law and a new trial nisi remittitur.

and so the Court could extend the time to file a request for attorneys' fees.[2]  And, in accordance with Federal Rule 54(d)(2)(B)(i), the Court issued the Counsel Fees Order on September 7, 2011, stating that the Plaintiff had fifteen days to file her petition for counsel fees.  Plaintiff complied when she filed a Petition for Award of Costs Including Reasonable Attorneys' Fees on September 22, 2011.  As a result, this Court finds that Plaintiff's Petition is timely.

Regarding costs, Local Rule 54(d)(1) states that "[t]he party entitled to costs shall file a bill of costs as provided in 28 U.S.C. §§ 1920 and 1924 within eleven (11) days from the entry of judgment, unless such time is extended by order of the Court."  As the Court explains below, Plaintiff's Petition is brought under Title VII of the Civil Rights Act, not

---

[2] The Court's statement that it would delay setting a timeline for fees also acted as an extension of time under Federal Rule 6.  That rule permits an extension if a request is made *or if the court acts* before the 14 day window expires.  Thus, there is an alternative avenue for finding the Petition timely.  Defendant argues that the Court's statement does not amount to an order extending time under Federal Rule 54.  (D. Supp. Opp. [Dkt. 143] at 1-2.)  Rule 6 does not, however, require an order within the 14 day window and the Court complied with Rule 54 when it issued the Counsel Fees Order on September 7, 2011.  Defendant further argues that the Court can only speak through orders and judgments and cites *New Horizon of NY, LLC v. Jacobs*, 231 F.3d 143, 152-52 (4th Cir. 2000), *Murdaugh Volkswagon v. First National Bank of SC*, 741 F.2d 41, 44 (4th Cir. 1984), and *Bell v. Thompson*, 545 U.S. 794, 805 (2005) in support.  The first two cases, however, stand for the proposition that a court's comments potentially conflicting with a final order or judgment, do not alter the plain meaning of the order or judgment.  And, the Supreme Court in *Bell v. Thompson*, addressed the question of whether inaction by the Fourth Circuit was sufficient to stay a mandate regarding an execution.  545 U.S. at 804.  In that case, the Court noted that the fact that the Fourth Circuit "had given no indication that it might be revisiting its earlier decision" was "important." *Id.*  Here the Court's statement extending the time to file a petition firmly supports its Order on Counsel Fees and thus Defendant's cannot claim a conflict between judicial pronouncements or inaction.

under 28 U.S.C. §§ 1920 or 1924.  Upon finding that this Court

has not otherwise ordered the parties to file a bill of costs

pursuant to Local Rule 54(d)(1), the Court finds that Plaintiff

is not bound by the rule.[3]  Thus, Plaintiff's Petition for Costs

Including Reasonable Attorneys' Fees is timely.

      B. <u>Attorney Fee Calculation</u>

      The Supreme Court defines a "prevailing party" as "one

whose lawsuit has effected a 'material alteration of the legal

relationship of the parties.'" *Buckhannon Board and Care Home,*

*Inc. v. W. Va. Dep't of Health and Human Servs.*, 532 U.S. 598,

604-05 (2001) (quoting *Tex. State Teachers Ass'n v. Garland*

*Indep. Sch. Dist.*, 489 U.S. 782, 792-93 (1989)).  This Court

finds that the jury verdict materially altered the legal

relationship between the parties and that Plaintiff is thus the

"prevailing party" in a sex discrimination suit under Title VII.

      Plaintiff seeks $302,418.00 in attorneys' fees.  (Pet.

[Dkt. 134] at 4.)  In support, Plaintiff provides a summary of

attorneys' fees that includes an itemized statement of all tasks

performed and the amount of time billed for each.  [Dkts. 134-5,

137-1, 144-1, 146-1.]  As additional support, Plaintiff submits

the affidavits of its attorney, Ellen K. Renaud and local

---

[3] Even if Local Rule 54(d)(1) were applicable, this Court extended time to
fill a request for costs with the order on September 7, 2011.  And to the
extent that Federal Rule of Civil Procedure 6 applies to Local Rule 54(d)(1),
counsel requested an extension of time to file within the 11 day window, as
the request was made the day the jury returned its verdict.

attorney, Zachary A. Kitts, attesting to the reasonableness of the fees incurred.  [Dkts. 134-1, 134-2.]

In opposition, Defendant argues that the time and labor expended is unreasonable and that Plaintiff has not produced sufficient evidence supporting the rates charged.  (D. Reply at 12-22.)  Defendant also argues that given counsels' experience the total hours appear excessive.  (D. Reply at 22-23.)  Finally, Defendant argues that there is nothing novel in this case and the skill required was that of a competent trial attorney.  (D. Reply at 23.)

i.    Reasonableness of the Number of Hours

The Court first must determine whether Plaintiff met her burden of establishing the reasonableness of the number of hours and billing rate for which she seeks recovery.  The Court notes that it was mindful of Plaintiff's duty to exercise billing judgment and paid careful attention to identify hours that appear excessive, redundant, or unnecessary. *See Hensley*, 461 U.S. at 437 ("The applicant should exercise 'billing judgment' with respect to hours worked.").  With these considerations in mind, the Court will analyze the reasonableness of the hours under each of the *Johnson/Kimbrell's* factors.

a)    Time and Labor Expended

The first *Johnson/Kimbrell's* factor relates to the time and labor required in the case.  Plaintiff seeks $302,418.00 in attorneys' fees.  In support, Plaintiff provides timesheet entries of the number of hours billed, by what attorneys, for what hourly charge, and the nature of the work completed.  [Dkts. 134-5, 137-1, 144-1, 146-1.]  Plaintiff also provided the following summary, which has been updated to include changes that are the result of initial reporting discrepancies and that are agreed upon by the parties:

| Attorney | Hours | Rate | Fee |
|---|---|---|---|
| Ellen Renaud | 16 | $255.00 | $4,080.00 |
| | 2.2 | $300.00 | $660.00 |
| | 16.4 | $330.00 | $5,412.00 |
| | 492.5[4] | $335.00 | $164,987.50 |
| | 9.1 | $400.00 | $3,640.00 |
| | 23.6[5] | $400.00 | $9,440.00 |
| Richard Swick | 3.8 | $440.00 | $1,672.00 |
| | 3.8 | $465.00 | $1,767.00 |
| | 79.7[6] | $475.00 | $37,857.50 |
| David Shapiro | 122.2 | $475.00 | $58.045.00 |
| | .9 | $495.00 | $445.50 |
| | 1.7[7] | $495.00 | $841.50 |
| J. Cathryne Watson | 59.0 | $230.00 | $13,570.00 |
| Totals | 805.6 | | $302.418.00 |

---

[4] There was a reporting mistake of 3.7 hours on the time that Counsel Renaud spent on the Riley-Hall deposition.  (D. Reply at 19; P. Rebuttal [Dkt. 139] at 7.)  Thus, counsels' original submission of 496.2 hours is reduced by 3.7 hours.
[5] Reflects the addition of time spent for work in support of the Petition. [Dkts. 144-1, 146-1.]
[6] There was a reporting mistake of 14.7 hours on the time that Counsel Swick should have deducted from lost claims.  Thus, counsels' original submission of 94.4 hours is reduced by 14.7 hours.  (D. Reply at 15; P. Rebuttal at 11.) The Court finds that there was no reporting mistake regarding the hours billed for Caussin's deposition.  (*See* P. Rebuttal at 8.)
[7] Reflects the addition of time spent for work in support of the Petition. [Dkt. 146-1.]

Additionally, Plaintiff submits an affidavit from its counsel Ms. Renaud asserting that the hours in this case are reasonable, because the case "was complicated by the vastness of the written and transcribed records as well as the reluctance of current employees of the County to come forward." (Renaud Aff. [Dkt. 134-1] ¶ 22.) And, because the case was "hard-fought," Defendant filed eleven contested motions. (Renaud Aff. ¶ 23.) Finally, Plaintiff notes that it voluntarily excluded a portion of the time spent on Plaintiff's unsuccessful claims in an effort to "exercise[] considerable billing judgment." (P. Rebuttal [Dkt. 139] at 8-11.)

Defendant makes a number of specific requests for a reduction in the number of hours that Plaintiff submitted. First, Defendant argues that 23.3 hours spent addressing Defendant's motion to exclude Captain Eschelman's testimony and to exclude evidence of unrelated incidents of sexual harassment should not be entirely taxable to the county. (D. Reply at 17-19.) Yet, that testimony was relevant to Plaintiff's hostile work environment claim, and regarding the particular motion, Plaintiff prevailed in part since Captain Eschelman was allowed to testify. That Plaintiff did not prevail on the other part of the motion does not mean Plaintiff should be required to pay for half of the motion. *See Jaffee v. Redmond,* 142 F.3d 409, 414 (7th Cir. 1998)(noting "a losing argument in support of a

successful claim for relief is fully compensable time"); *Cnty. Sch. Bd. v. A.L.*, No. 4:03cv174, 2007 U.S. Dist. LEXIS 16395, at *37-38 (E.D. Va. Mar. 6, 2007)("While the Court must consider the overall result of the litigation in terms of the moving party's success, no authority exists which persuades the Court to reduce the fee award for reasonable, but unsuccessful tactics within the litigation. The Court's inquiry is simply whether the time was reasonably expended.").

Defendant also argues that hours spent on a motion to limit damages and a motion to quash witness subpoenas should be denied, arguing that they resulted from poor decisions by Plaintiff and thus were in essence the Plaintiff's fault. (D. Reply at 16-17.) Plaintiff counters that Defendant's strategy in pursuing the motion to limit damages was flawed, as the rules did not require a computation. (P. Rebuttal at 12.) Plaintiff also argues that the subpoenas were necessary because Defendant had not agreed to produce its employees at trial in exchange for Plaintiff's cooperation with scheduling of their testimony. (P. Rebuttal at 13.) This Court recognizes that the trial in this case involved heavy motions practice and relatively combative litigation strategies. As a result, the Court finds that Plaintiff's hours related to these motions are reasonable.

Defendant also makes two sets of arguments regarding a number of depositions in this case. First, the County argues

17

that time spent on the depositions (or on deposition transcripts) of particular individuals should be excluded. Specifically Defendant argues that time spent on Varholy, Bourjaly, Morton, and McKernan should be excluded because they were not necessary to the case (D. Reply at 20); that time spent on Mohler, Williams, Varholy, and Brennan should not be allowed because their testimony was excluded at trial (D. Reply at 20-21); that time spent on Dodwell's testimony should be excluded because it was related solely to Bland's retaliation claim; and that the time spent of the depositions of Riley-Hall, Larson, Clarke, Thompson, and Butler should be excluded because they were deposed for a related case:  *Bailey v. Fairfax Cnty. Va.*, No. 1:10-CV-1031, 2010 U.S. Dist. LEXIS 135512 (E.D. Va. Dec. 21, 2010) (D. Reply at 20).  Second, the County argues that "Bland's counsel is not entitled for fees to cover the costs of two attorneys at a deposition where only one attorney is necessary."  (D. Reply at 20.)

Turning first to the depositions of Riley-Hall, Larson, Clarke, Thompson, and Butler, Plaintiff argues that these witnesses, who appear to be related to the *Bailey* case, are included because they were relevant to Plaintiff's § 1983 claim.  (P. Rebuttal 5-9.)  As a result, the Court will consider the fees associated with those depositions, and the deposition of Dodwell, when it considers unsuccessful, unrelated claims.

As to time spent on the remaining depositions, the
Fourth Circuit has held that costs of a deposition should be
awarded "when the taking of a deposition is reasonably necessary
at the time of its taking." *Jop v. City of Hampton*, 163 F.R.D.
486, 488 (E.D. Va. Oct. 20, 1995) (emphasis added) (quoting
*LaVay Corp. v. Dominion Fed. Savings & Loan*, 830 F.2d 522, 528
(4th Cir. 1987)).  "In order for the deposition to be necessary,
it needs only to be 'relevant and material' for the preparation
in the litigation." *Signature Flight Support Corp. v. Landow
Aviation L.P.*, 730 F. Supp. 2d 513, 531 (E.D. Va. 2010) (quoting
*Ford v. Zalco Realty, Inc.*, 708 F. Supp. 2d 558, 562 (E.D. Va.
2010)).  Additionally even if it is not used at trial, "[a]
deposition taken within the proper bounds of discovery" is
normally "deemed to be 'necessarily obtained for use in the
case.'" *Id.* (quoting *Cofield v. Crumpler*, 179 F.R.D. 510, 518
(E.D. Va. 1998)).  The Court finds that the depositions of the
remaining contested witnesses were all relevant and material for
the preparation in this litigation.

As to the appropriate number of attorneys attending a
deposition, this Court is "sensitive to the need to avoid use of
multiple counsel for tasks where such use is not justified by
the contributions of each attorney." *Rum Creek Coal Sales*, 31
F.3d at 180.  The Court recognizes that in some instances it may
be appropriate for two attorneys to attend important

19

depositions, as separate contributions can be made on questioning and credibility assessment.  Here Plaintiff used two attorneys at the depositions of the five purportedly most significant witnesses (O'Conner, Caussin, Edwards, Mastin, and Riley-Hall).  (P. Rebuttal at 8.)  The Court does not believe that it was reasonable, in relation to this case, for two lawyers to attend the deposition of Riley-Hall.  As a result, the Court will deduct the 4.2 hours Mr. Swick spent on the deposition of Riley-Hall on February 7, 2011.  Thus, $1,995.00 will be deducted from Mr. Swick's fee.  The Court otherwise finds that the time entries related to motions and depositions do not appear excessive, redundant, or unnecessary and no reduction is required under this factor.

Regarding time not specifically addressed above, the Court finds that the hours associated with trying the case are reasonable.  The hours spent preparing the petition for attorneys' fees, however, are not.  The Court recognizes that time spent defending entitlement to attorneys' fees is compensable in civil rights cases.  *See Daly v. Hill*, 790 F.2d at 1080.  But in this case, Plaintiff requests 23.6 hours for Ms. Renaud to prepare the Petition and attend oral argument for attorneys' fees, and those hours are in addition to Mr. Shapiro's.  The Court finds that given Ms. Renaud's familiarity with the case, a fifty percent reduction in the hours she spent

in support of the Petition is appropriate.  Therefore, 11.8 hours, or $4,720.00, will be deducted from Ms. Renaud's fee.

      b)    <u>Novelty and Difficulty of Questions Raised;
Skill Required; Experience, Reputation, and
Ability of Attorney</u>

Regarding the novelty and difficulty of the questions raised, Defendant argues that there is nothing legally novel in this case and that it is fundamentally a factual dispute.  (D. Reply at 23.)  Defendant asserts that the skill required to properly perform the legal services was that of a competent trial attorney.  (D. Reply at 23.)  And, Defendant argues that the experience, reputation, and ability of Plaintiff's counsel indicate that they should have been able to prepare for various motions in this case in substantially less time.  (D. Reply at 22-23.)

Plaintiff notes that the "case was rather straight-forward," but argues that it was "complicated by the vastness of the written and transcribed records as well as the reluctance of current employees of the County to come forward."  (Renaud Aff. ¶ 22.)  Plaintiff's counsel Ms. Renaud states that she "was informed of several women who experienced harassment by male firefighters" and after developing leads was "able to support Ms. Bland's case with evidence that two other women experienced similar conduct from the Lieutenant."  (Renaud Aff. ¶ 8.)  And Plaintiff argues that "[t]he case was also hard-fought, even for

cases of this type" and that the "County was reluctant to produce discovery and made scheduling depositions difficult." (Renaud Aff. ¶ 23.)

While this case did not present a novel legal question, it involved difficult factual issues that required fairly voluminous records and testimony.  At the time of the filing of the petition for attorneys' fees, the docket contained 132 entries.  Upon review of the time counsel spent on motions, the Court finds that the hours charged by counsel are reasonable in light of the difficulty of the case, the skills required to present the case, and the ability of Plaintiff's counsel.  Therefore, these factors will not ultimately affect the Court's fee determination.

            c)   <u>Reasonable Rate</u>

The prevailing party's requested hourly rates must be reasonable.  *Rum Creek Coal Sales*, 31 F.3d at 175 (citing *Hensley*, 461 U.S. at 433).  The determination of the reasonableness of given rates is a "fact-intensive [one] and is best guided by what attorneys earn from paying clients for similar services in similar circumstances."  *Id.* (*citing Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)).  To carry this burden, a plaintiff can establish the market rate "through affidavits reciting the precise fees that counsel with similar qualifications have received in comparable cases; information

22

concerning recent fee awards by courts in comparable cases; and specific evidence of counsel's actual billing practice or other evidence of the actual rates which counsel can command in the market." *Spell v. McDaniel*, 824 F.2d 1380, 1402 (4th Cir. 1987) (citations omitted).  This evidence must be submitted "[i]n addition to the attorney's own affidavits." *Plyler v. Evatt,* 902 F.2d 273, 277 (4th Cir. 1990).

Plaintiff submits that the billing rates for legal services in this case are "all within the market rates for attorneys of similar experience levels as established in [the] current Laffey Matrix as updated to include 2010-2011." (Renaud Aff. ¶ 20.)  There is a variety of evidence indicating that the rates are reasonable in this case.  First, Plaintiff submits in the affidavit of its lead counsel that the hours are the "usual and customary rates" for attorneys working in the law firm of Swick & Shapiro, P.C.  (Renaud Aff. ¶¶ 12, 29-30.)  Second, Plaintiff states that the "retainer agreements between the law firm and Ms. Bland specify that the attorneys of the firm are to be compensated at the Laffey rate."  (Renaud Aff. ¶ 18.)

Third, Plaintiff provides examples of a number of cases in the Eastern District of Virginia where courts have awarded Laffey rates in comparable situations.  *See Bennett v. Fairfax County,* No. 05-250A, 2006 U.S. Dist. LEXIS 29458, (E.D. Va. Apr. 25, 2006) (awarding counsel Ms. Renaud, Mr. Shapiro,

and Mr. Swick rates based on the Laffey Matrix in a race discrimination case); *Cox v. Reliance Standard Life Ins. Co.*, 179 F.Supp. 2d 630, 635 (E.D. Va. 2001) (finding that rates just at or slightly below the Laffey Matrix were reasonable in case where attorney had practiced focused civil litigation for over twenty-one years); *Corinthian Mortg. Corp v. Choicepoint Precision Mktg., LLC*, No. 1:07cv832, 2009 U.S. Dist. LEXIS 723, at *11-12 (E.D. Va. Jan. 5, 2009) (applying a ten percent reduction to requested fees because it "will place all of the rates at or slightly below the guideline rates contained in the Laffey Matrix"). Plaintiff also notes a case tried before this Court, *Raymond L. Tenenholtz v. Donald L. Powell*, Civil Action No. 03-14-A (E.D. Va.), where the U.S. Attorney's Office for the Eastern District of Virginia accepted the rates adopted under the Laffey Matrix in settling the case. Finally, Plaintiff offers the declaration of a local attorney who also sets his rates with the Laffey Matrix as a guide. (Kitts Aff. [Dkt. 134-2] ¶ 15.)

Defendant argues that the hourly rates charged by attorneys in Washington, D.C. are generally higher than the hourly rates charged in the Eastern District and that Plaintiff's counsel has not met her burden to establish that Laffey rates are the "prevailing rates in the Eastern District." (D. Reply at 14.) Defendant also notes a $30 discrepancy in

rate between the affidavit of the local attorney, Zachery A. Kitts, and Ms. Renaud's rate from February 2009 through December 2009.  (D. Reply at 14.)  Finally, Defendant argues that this Court should not allow the rates requested by Mr. Swick, Mr. Shapiro, and Ms. J. Cathryne Watson because "Bland's counsel has submitted nothing more than her affidavit to support [their] hourly rates . . ."  (D. Reply at 14.)

        This Court recognizes, as it has done so recently, that it is not bound by the Laffey Matrix.  *See United States ex rel. Thyssenkrupp Safway, Inc. v. Tessa Structures, LLC*, No. 1:10cv512, 2011 U.S. Dist. LEXIS 71755, at *14-25 (E.D. Va. July 5, 2011).  In this case, however, Plaintiff has provided ample evidence to establish that the rates are reasonable.  In addition to affidavits, Plaintiff has provided a number of highly relevant, recent cases from the Eastern District discussing fee awards, including a case that specifically awarded Laffey rates to counsel Ms. Renaud, Mr. Shapiro, and Mr. Swick.  *See Bennett v. Fairfax Cnty.,* No. 05-250A, 2006 U.S. Dist. LEXIS 29458 (E.D. Va. Apr. 25, 2006).  Furthermore, this Court notes that both Mr. Shapiro and Mr. Swick have substantial experience, as they have been practicing for 37 years, well over the 20 years where the Laffey Matrix caps out.  Plaintiff's counsel also provides specific evidence on the firm's billing practice and notes that the retainer agreements with Plaintiff

specify that the attorneys at the firm are be compensated at the Laffey rate.  *See Hanzlik v. Birach,* No. 1:09cv221, 2010 U.S. Dist. LEXIS 41624, at *11-12 (E.D. Va. Apr. 28, 2010) ("The Laffey Matrix number is particularly relevant in this case as the retainer agreement between Mr. Kitts and Hanzlik specified that Kitts be compensated at the Laffey rate . . .").  A $30 discrepancy between a rate by local counsel and Ms. Renaud's rate for a period of time when at most 18.6 hours were charged is not sufficient to indicate that the fees in this case are unreasonable in light of the other evidence.  As a result, the Court finds that the billing rates Plaintiff used to calculate its fee request are reasonable and that no reduction is required.

d) Attorneys' Fees Awards in Similar Cases

Turning to the fee awards in similar case, in a race discrimination case before the District Court for the Eastern District of Virginia, Ms. Renaud, Mr. Shapiro, and Mr. Swick were awarded full attorneys' fees of just under $230,000.  *See Bennett,* 2006 U.S. Dist. LEXIS 29458 at *18-19.[8]  In that case, the Court did so despite having remitted the jury's compensatory

---

[8] At argument, counsel for Defendant argued that *Bennett* should be distinguished because the court in that case awarded fees only after the plaintiff reduced the fee request.  The court in *Bennett,* however, very clearly stated that the plaintiff "reduced its fee request in response to discrepancies illuminated by the [d]efendant."  *Bennett,* 2006 U.S. Dist. LEXIS 29458 at *18.  The Plaintiff here has already made similar reductions.  Thus, the court's determination to award full attorney's fees in *Bennett* is fully applicable and this Court reiterates that it weighs in favor of finding the requested fees reasonable.

damage award to $50,000.  *See id*.  Plaintiff notes "[t]hat case required far fewer hours than the present case because the record was smaller, there were fewer witnesses, and the County did not engage in a prolific pretrial motions practice as it did in this matter."  (Pet. at ¶ 15.)  This Court will take the award in *Bennett v. Fairfax County* into consideration when makings its final determination of attorneys' fees, noting that this factor weighs in favor of finding the requested fees reasonable.

### e) Opportunity Costs

In considering opportunity costs, courts often look to the drain of resources on a firm during the litigation, the length of the litigation, and, in some cases, the unpopularity of the case.  *See Spell v. McDaniel*, 824 F.2d 1380, 1402 (4th Cir. 1987)(noting that counsel "incurred substantial opportunity costs in pursuing the litigation, given the drain of resources on their four-person firm and the unpopularity of their case within the community"); *United States ex rel. Thyssenkrupp Safway,* 2011 U.S. Dist. LEXIS 71755 at *13-14 (noting that "time spent does not seem to the Court to have been so voluminous to have precluded other representation on the part of [] counsel"); *Walker v. Dovetails, Inc.*, No. 3:10cv526-HEH, 2010 U.S. Dist. LEXIS 141635, at *15-16 (E.D. Va. Nov. 30, 2010)(noting that since the case was resolved in one week and the costs associated

with discovery were avoided, the case imposed little opportunity costs on counsel).

Turning to the attorneys' opportunity costs in pressing the instant litigation, Plaintiff argues that counsel has declined three requests for representation by Fairfax County Firefighters with employment concerns due to potential conflicts of interest with the instant litigation. (P. Supp. [Dkt. 144] at 1.) The creation of potential conflicts for a firm going forward is inevitable in any case, and it is not the type of opportunity cost that this Court finds pertinent to the attorneys' fees award. Thus, this factor will not affect the Court's determination.

### f) Additional Factors

The Court does not believe that the following factors warrant special consideration in this case: the attorney's expectations at the outset of the litigation; the time limitations imposed by the client or circumstances; the undesirability of the case within the legal community in which the suit arose; or the nature and length of the professional relationship between attorney and client. There is no evidence presented on any of these factors that the Court finds would affect its attorneys' fees award analysis.

### ii.    Lodestar Amount

Plaintiff requested $302,418.00 in attorneys' fees. After taking into account the *Johnson/Kimbrell's* factors as evaluated above, the Court finds that the only appropriate reductions are $1,995.00 for Mr. Swick's attendance at the deposition of Riley-Hall and $4,720.00 for Ms. Renaud's time spent preparing the Petition.  As a result, the Court will reduce the fees to a lodestar amount of $295,703.00.

### iii.   Unrelated Unsuccessful Claims

After calculating the lodestar figure, the "court then should subtract fees for hours spent on unsuccessful claims unrelated to successful ones." *Johnson v. City of Aiken*, 278 F.3d 333, 337 (4th Cir. 2002).  Plaintiff has already made deductions for hours spent on the unsuccessful § 1983 and retaliation claims.  Plaintiff deducted all of the time spent researching and drafting the standard for § 1983 claims since that was clearly extricable from the work of the Title VII claims.  (P. Rebuttal at 10.)  And Plaintiff deducted time spent on the depositions of witnesses that were conducted in pursuit of Bland's § 1983 claim.  (P. Rebuttal at 9.)  This includes all time for the depositions of Larson, Clarke, Butler and Iacone, but only a portion of the time for Dodwell because he had information relevant to the retaliation claim and the County's liability.  (P. Rebuttal at 7.)  Plaintiff did not deduct time for Thompson because he had information regarding inappropriate

29

comments made to female firefighters and thus his deposition was relevant and material to Plaintiff's hostile work environment claim.  (P. Rebuttal at 9.)  Plaintiff also deducted half of the time spent in discovery more closely related to the retaliation claim, analyzing those depositions, and drafting that section of the brief.  (P. Rebuttal at 11.)

Nonetheless, Defendant argues that many of the hours submitted are attributable to either unsuccessful or unrelated claims and therefore should not be included.  (D. Reply at 15-22.)  For example, Defendant argues that at most only two thirds of the 96 hours of unidentified time spent on the motion for summary judgment should be allowed because Defendant prevailed on the § 1983 and retaliation claims.  (D. Reply at 15-16.)  As discussed above, Defendant also makes arguments about the exclusion of fees related to the deposition of a variety of individuals who testified regarding the other claims and/or in related case of *Bailey.*  Finally, Defendant argues the hours spent on the related *Bailey* case should not be allowed.  (D. Reply at 21.)  For example, Defendant argues that time spent on a motion to compel in that case was included and time spent reviewing the Station 40 file was included.  (D. Reply at 21.)

Based on its careful independent review of the timesheets and the declarations submitted by Plaintiff, the Court finds that Plaintiff has appropriately identified and

30

deducted hours in order to makes the request for fees
reasonable.  The Court finds that no further reduction is
necessary because in this case all of Plaintiff's claims arose
from a "common core of facts." *See Brodziak v. Runyon*, 145 F.3d
194, 197 (4th Cir. 1998) (quoting *Hensley v*, 4651 U.S. at 435).
At this point in the analysis, "the appropriate inquiry concerns
whether the claims on which the plaintiff prevailed are related
to those on which he did not." *Id.*  The Supreme Court explained
that "litigants in good faith may raise alternative legal
grounds for a desired outcome, and the court's rejection of or
failure to reach certain grounds is not a sufficient reason for
reducing a fee." *Hensley*, 461 U.S. at 435; *see also Johnson v.
Hugo's Skateway*, 974 F.2d 1408, 1419 (4th Cir. 1992)(remanding
for reconsideration of a fee award when the district court may
have reduced the award to account for the fact that the
plaintiff prevailed on only one of three claims, when all of the
claims arose from the same operative facts and the plaintiff
achieved a sizeable verdict).  The claims here were related and
therefore, this Court will not reduce the award for
unsuccessful, unrelated claims.

        iv.     Degree of Success

     Finally, as noted above, "the degree of success
obtained by the plaintiff is the 'most critical factor' in
determining the reasonableness of a fee award." *Lilienthal*, 322

F. Supp. 2d at 675 (quoting *Hensley*, 461 U.S. at 436–437).  Here Plaintiff originally brought three claims: an Equal Protection claim under § 1983, an Equal Protection and Title VII claim for retaliation, and a Title VII claim for a hostile work environment.  Ms. Bland prevailed on her Title VII claim for a hostile work environment and thus in her "main goal of secur[ing] protection from Lt. Young's sexual harassment and to discourage sexual harassment in the Fairfax County Fire Department."  (P. Rebuttal at 16.)

Ms. Bland's success as a civil rights plaintiff cannot be measured entirely by her monetary recovery, as her success also has an impact on the local public, specifically Defendant's employees.  *See City of Riverside v. Rivera*, 477 U.S. 561, 576 (1986) (rejecting the proposition that fee awards under § 1988 should necessarily be proportionate to the amount of damages a civil rights plaintiff actually recovers).  The Supreme Court has explained that "[b]ecause damages awards do not reflect fully the public benefit advanced by civil rights litigation, Congress did not intend for fees in civil rights cases, unlike most private law cases, to depend on obtaining substantial monetary relief."  *Id.* at 575.  The Court finds that Plaintiff achieved full success and therefore an award of $295,703.00 in attorneys' fees is reasonable.

C. Costs

Lastly, Plaintiff requests $11,002.69 for costs incurred in this litigation.  Plaintiff submits an "Invoice for Reimbursable Expenses" that provides detail on the majority of those costs.  [Dkts. 134-4, 146-2.]

| Vendor | Service | Amount |
|---|---|---|
| Diversified Reporting Services | Depositions | $4,462.35 |
| Anita Glover & Assoc., LTD | Court Reporting | $1,070.50 |
| Capitol Process Services, Inc. | Service of Process | $510.00 |
| Lasership | Courier Service | $25.22 |
| Photocopy Machine | Copying/Faxing/Scanning | $2,988.00 |
| Parking[9] | Transportation/Lunch | $47.78 |
| Transportation | Personal Mileage | $318.81 |
| Westlaw Expenses | Research | $614.29 |
| Norman B. Linnell, PMR | Court Reporter (E.D.Va) | $510.30 |
| Mid-Atlantic Rescue Systems | Pike Pole | $50.00 |
| United States Postal Service | Certified Mail | $5.44 |
| Court Filing Fees | Complaint/Pro Hac Vice | $400.00 |
| Totals | | $11,002.69 |

Defendant argues that the request for costs is governed by Federal Rule of Civil Procedure 54(d) (and corresponding Local Rule of Civil Procedure 54(D)(1)) and 28 U.S.C. §§ 1920, 1924.  (D. Reply at 8.)  Relying on those rules and statutes, Defendant argues that Plaintiff's cost request is missing a required affidavit, contains a deficient itemization of particular expenses, and includes categories of costs that are not permitted.  (D. Reply at 8-10.)  Defendant also argues

---

[9] Reflects the addition of $12 for parking expense at the Petition hearing. [Dkt. 146-2.]

that Plaintiff should not be allowed to recover costs for some depositions.  (D. Reply at 10-11.)  In conclusion, Defendant seeks denial of all costs or their substantial reduction.  (D. Reply at 10-11.)

Defendant's reliance upon Fed. R. Civ. P. 54(d) and 28 U.S.C. §§ 1920, 1924 ignores the fact that this case is a civil rights action.  In *Wheeler v. Durham City Board of Education*, 585 F.2d 618, 623 (4th Cir. 1978), the Fourth Circuit explained that "[i]n determining whether litigation expenses should be recovered as part of attorneys' fees, a distinction should be drawn between taxable costs, authorized under F. R. Civ. P. 54(d), and statutorily authorized attorneys' fees."  The Court stated that "[w]here attorneys' fees are expressly authorized by statute, as in § 1617, Rule 54(d) is no longer relevant."  *Id.* "Instead, the question is whether the statutory authorization of reasonable attorneys' fees was intended to include litigation expenses."  *Id.* (holding that the statutory authorization was intended to include litigation expenses).

The Fourth Circuit went on to apply its holding in *Wheeler* to expense awards under § 1988.  *Daly v. Hill*, 790 F.2d at 1082-84.  The Court explained

> The difference between the scope of costs taxable under
> Fed. R. Civ. P. 54(d) and 28 U.S.C. § 1920 and under § 1988
> is due to the fact that these two bodies of law . . . are
> grounded in antithetical policies.  Rule 54(d) and § 1920
> are premised on the traditional 'American Rule' that each
> party to a lawsuit bear its own costs.  Section 1988 was

34

> intended as an exception to the American Rule and is
> premised on the idea of fee shifting.  Because meritorious
> civil rights plaintiffs are 'private attorneys general'
> enforcing important congressional policies, § 1988 is
> intended to encourage them to bring suit by shifting the
> costs of litigation to defendants who have been found to be
> wrongdoers.

*Id.* at 1083-84 (internal citations and quotations omitted.)  *See also Project Vote/Voting for Am., Inc. v. Dickerson*, No. 10-2403, 2011 U.S. App. LEXIS 18118, at *12-13 (4th Cir. Aug. 29, 2011) (noting Congress' intent in enacting § 1988).  This request for costs is brought pursuant to Title VII of the Civil Rights Act of 1964, which confirms the discretion granted to the court by the Civil Rights Attorney's Fees Awards Act, 42 U.S.C. § 1988.  Thus, the request for costs is governed by the fee shifting provision of Title VII.

     This Court turns to Plaintiff's request while recognizing that "[a]n expense award, like an attorney's fee, must adequately compensate counsel without resulting in a windfall."  *Daly v. Hill,* 790 F.2d at 1084 n. 18.  As the Fourth Circuit explained in *Wheeler*:

> Litigation expenses such as supplemental secretarial costs,
> copying, telephone costs and necessary travel, are
> integrally related to the work of an attorney and the
> services for which outlays are made may play a significant
> role in the ultimate success of litigation . . . . [T]o
> recount the reasons for including litigation expenses in a
> fee award is perhaps to state the obvious; for other
> federal courts have routinely provided for recovery of out-
> of-pocket expenses in conjunction with fee awards.

> * * *

> We view differently, however, the fees and expenses of
> outside, non-legal consultants and experts. Their fees and
> expenses are traditionally not regarded as attorneys' fees,
> however essential their services may be to the successful
> preparation and trial of a complex case.

585 F.2d at 624; *see also Trimper v. City of Norfolk,* 58 F.3d 68, 75 (4th Cir. 1995) (noting that "the *Daly* Court specifically held that § 1988 contemplates reimbursement not only for attorney's fees but also litigation expenses such as secretarial costs, copying, telephone costs and necessary travel.")

The Court has carefully reviewed Plaintiff's "Invoice for Reimbursable Expenses" and finds that the expenses are appropriate under Title VII.  The Court has already determined that fees associated with the depositions are reasonable and the same reasoning applies to the costs associated with the depositions.[10]  Therefore, the Court awards expenses in the amount of $11,002.69.

---

[10] This Court did not find any additional expense (beyond the attorneys' fees) related to having two attorneys attend the Riley-Hall deposition.

### IV.  Conclusion

For these reasons, the Court will grant Plaintiff's Petition in the amount of $295,703.00 and $11,002.69 in costs, for a total of $306,705.69.

An appropriate Order will issue.


/s/

November 7, 2011                 James C. Cacheris
Alexandria, Virginia      UNITED STATES DISTRICT COURT JUDGE